ISAAC TYSON, Jr., *v.* THOMAS J. DOE.

In the case of a contract to deliver certain furnace castings, to a certain amount, upon a credit of a year, it was held, that a refusal to receive a load of the castings, put an end to the contract, as to the obligation both to deliver the balance, and to give the stipulated credit for the amount delivered ; and that an action of book account might be sustained immediately, for the quantity delivered.

T. and D. made a contract, by which T. was to furnish plough irons and D. was to wood them, and return half the ploughs. D. set aside, under the contract, twelve ploughs, as the property of T., six of which were subsequently attached and sold on execution as D.'s property. *Held*, that T. could not maintain an action of book account against D. to recover their value.

THIS was an action of book account. There was a judgment to account, and reference to an auditor.

The auditor reported, that the plaintiff's account against the defendant, embraced, among other things, charges for cultivator teeth, and plough castings, to the amount of $285.92, delivered the defendant, under a verbal contract, whereby the plaintiff agreed to deliver to the defendant one thousand cultivator teeth, and plough castings enough to make the amount $500, at $4\frac{1}{2}$ cents per

pound, to be paid, $50 in work, on demand, and the balance in cash, in one year ; that, within about two months from the making of the contract, and a short time before the commencement of this suit, the defendant failed, and that after his failure, and before the bringing of this suit, he refused, to receive a load of castings sent him under the contract. Upon this statement, the auditor submitted to the court, whether the plaintiff ought to recover the $285.92, for the castings delivered.

The auditor also reported, that the plaintiff and defendant had made a contract, by which the plaintiff was to furnish the defendant plough irons, and the defendant was to wood them, and return half the ploughs ; and that, after the failure of the defendant, he set aside, as the property of the plaintiff, twelve ploughs which he had thus wooded for him under the contract—six of which were, subsequently, attached and sold on execution, as the property of the defendant, and the remaining six were received by the plaintiff; and that the plaintiff had charged the said six ploughs, thus attached and sold, in his account against the defendant, at $39.72—the question in regard to the allowance of which, the auditor submitted to the court.

On the coming in of the report, the county court rendered judgment thereon, in favor of the plaintiff, for said two sums of $285.92, and $39.72 ; to which decision the defendant excepted.

*E. Farr*, for defendant,

If the refusal of defendant to receive the load of castings, had the effect of releasing the plaintiff from the obligation to furnish the balance, its effect would be to give the plaintiff the same rights as if he had furnished the whole $500, not varying the credit or mode of payment; and, in that case, the plaintiff is entitled to furnish the balance, or make a tender of them, or recover for the whole without doing so.

The $39.72 could only be recovered of the officer who took the ploughs.

*J. Berry and J. W. D. Parker*, for plaintiff.

The refusal by the defendant to receive the load of castings, offered by the plaintiff on the contract, was a putting an end to the contract by the defendant. The plaintiff was there-

upon discharged from a further fulfilment on his part, so that the defendant could not, subsequently, by his own act, restore himself to his rights under it.  8 Cow. R. 63.

If the defendant repudiated or violated the contract, or was not in a situation to perform it, as stipulated, the plaintiff was no longer bound by it, and may recover for the property previously delivered. *Harrington* v. *Wells*, 12 Vt. R. As this part of the claim is for specific property, delivered at a price fixed and agreed upon by the parties, and such as may, ordinarily, be a subject of book charge, the special agreement, as to the time and mode of payment will not exclude the plaintiff from the right to charge on book. *Boardman* v. *Keeler*, 2 Vt. R. 65 ; *Fry* v. *Slyfield*, 3 Vt. R. 246 ; *Blish et al.* v. *Granger*, 6 Vt. R. 340 ; *Way* v. *Wakefield*, 7 Vt. R. 223.

The report shows that twelve ploughs were set apart by defendant as belonging to the plaintiff, and were conceded, and treated by him as the plaintiff's property.   The defendant derived a substantial benefit from the sale of these ploughs by the extinguishment of debts outstanding against him ; and justice requires that he should render an equivalent. *Dyer* v. *Jones*, 8 Vt. R. 205 ; *Gilman et al.* v. *Hall*, 11 Vt. R. 513–14.

The opinion of the court was delivered by

ROYCE, J.—The questions arising upon the report of the auditor, relate to that class of items in the plaintiff's account which make up the sum of $285.92, and to the six ploughs, amounting to $39.72.   In reference to the former, it is first to be determined, whether any action could properly be commenced, until the time of payment originally agreed upon had passed ; and secondly, whether the action on book account was the proper action.

So long as a contract, by its terms, remains executory, it may be rescinded, or put an end to, in various ways.  This may sometimes be done in virtue of a right expressly reserved to one party alone, or to each of the parties.  So the contract may be subject to some express or implied condition, the non-performance of which shall operate to annul it, at the election of the party entitled to insist on the condition. It may be superseded by another agreement upon the same subject, or the parties may renounce and abandon it, by mu-

tual consent. And although we find it laid down, as a general rule, that the neglect or refusal of one party to fulfill a contract will not entitle the other to rescind it, unless they can both be placed *in statu quo;* yet the rule, in this extent, is understood to be applicable only to such an entire recision of the contract, *ab initio,* as shall revest in each party the rights he possessed, antecedently to the contract. Even then it may be doubted whether the rule is without exceptions. *Giles* v. *Edwards,* 7 T. R. 181 ; *Gray* v. *Hull,* 11 Johns. R. 441. There is, likewise, a class of cases, which allow a party to sue, in general assumpsit, for a part performance of a special contract, and absolve him from a further execution of it, because the other party has violated the contract, or refused further to act under it. These cases do not always proceed upon the notion of a strict and absolute recision of the contract, since they often permit the partial execution of it to stand *pro tanto. Planché v. Colburn,* 8 Bing. 14. See also 1 Pick. 57, and 4 Wend. 285. Of this latter description is the present case. It was never supposed that the property in the articles, already delivered under the contract, was to revest in the plaintiff, though the conduct of the defendant fully authorized him to suspend any further delivery. The contract thereupon ceased to be executory on the part of the plaintiff, his accruing obligations under it being thus discharged. And we think he became entitled to treat the stipulation for a year's credit as being equally at an end. To allow the defendant to insist on that stipulation, whilst he repudiates others, would be to enforce a different contract from that which the parties entered into. It may be admitted as generally true, that where there is a mere waiver of further performance, by mutual assent, the contract, in other respects, will remain in force. *James* v. *Cotton,* 7 Bing. 266. In this case, however, there was no such mutual waiver by consent, but a violation of the contract by one party, which prevented its further execution by the other.

The view which has been taken of the contract disposes of the next point. Although the articles charged were delivered under a special contract, they were such as are usually charged on book ; and the parties evidently intended that an account on book should be made, not only of the articles

delivered on one side, but of the services to be rendered, and other payments to be made, on the other. And the provision for giving credit having ceased to bind the plaintiff, he was at liberty to bring his suit, either on book account, or in general assumpsit.

The claim for the six ploughs is entirely of new impression, especially in this form of action. It is not for property sold or delivered to the defendant, or for which he has ever consented to be accountable. The claim arises from a disposition of the ploughs, which took place without the concurrence of either of these parties. They were attached and sold on process against the defendant, after he had set them apart as the property of the plaintiff. And if the designation was effective to pass the property and possession, the attachment was a trespass upon the plaintiff, for which he has a remedy. If the designation was insufficient for that purpose, the plaintiff might raise the question, whether he was bound to account for the ploughs, as for property purchased of the defendant; and if once bound, whether the liability had not become extinguished, or a counter liability imposed upon the defendant, since the property ultimately went for his benefit. But all this is beyond the legitimate scope of the book action. For the purpose of recovering the price or value of property, this form of action should be limited to cases of actual sale, or to cases where the party has admitted his indebtedness and liability *as upon a sale;* in other words, where he has consented that his previous appropriation of the property should be treated as a purchase of it. *Pangborn* v. *Saxton*, 11 Vt. R. 79; *Starr* v. *Huntley*, 12 Vt. R. 13. We are clearly of opinion, that, for this portion of his account, the plaintiff should not have had judgment. The judgment below is, therefore, reversed, and another judgment is to be entered up in favor of the plaintiff, including the $285.92, but excluding the $39.72.