[Piper *v.* Sloneker et al.]

# Piper *versus* Sloneker et al.

1. He who would rescind a contract on account of the other parties failure to comply with the conditions precedent, must be in no default himself, and both parties must be placed in the same condition they were in, when the contract was made.

2. A person in possession of land, under articles, must, in order to rescind the contract, give up his possession.

3. Where a vendee in possession sued the vendor for the part of the purchase-money paid, and obtained a judgment which was to be released on a title being made within five months, and the vendee, after that time, issued execution and made the money on the judgment, and still retained the possession; it was held that he could not make title under the Statute of Limitations.

4. Where payment of the purchase-money is a covenant precedent to the conveyance of the title, the vendee must show an offer to pay, before he can rescind the contract.

5. A vendee, under articles, who sets them up as a defence to an action of ejectment brought by the vendor, in which a conditional verdict is rendered for the plaintiff, will not be allowed afterward to maintain, that the articles of agreement were previously rescinded.

ERROR to the Court of Common Pleas of *Indiana county*.

This was an action of ejectment brought by Piper, the plaintiff in error, against Daniel Sloneker and Henry Billington. The history of the case was as follows:—

A warrant was granted to Thomas Billington for 800 acres, dated 16th April, 1800, No. 5828. A survey, including the land in dispute, was made, dated 10th April, 1801, for 867¾ acres; accepted 30th October, 1811; patented to Henry Billington, trustee for the heirs of Thomas Billington, deceased, 29th September, 1834. According to the testimony of William P. Brady, there was an understanding between him and Thomas Billington, by parol, that Billington was to take out the warrant, and he, Brady, was to lay it and sell it, and dispose of the land as he pleased, and Billington to make the deeds when called for. Brady, by article of agreement, in his own name, without noticing Billington, sold the land in dispute to Isaac McHenry, on the 22d November, 1801, at three dollars per acre, to be paid in six years, clear of interest. Brady, by same agreement, covenanted to make McHenry a deed for the land sold to him by said article, being 254½ acres, clear of all incumbrances, at any time said McHenry would give bond and mortgage for the purchase-money. Thomas Billington died in 1804, and his children were under age. No title was ever offered to Isaac McHenry. Brady testified that no part of the purchase-money was paid. William McHenry, son and executor of Isaac McHenry, testified that $30 of the purchase-money had been paid by his father, in pursuance of this contract with Brady, in

[Piper *v.* Sloneker et al.]

the year 1802, who erected buildings and cleared thirty acres of land, and lived there until his death, in 1812 or 1813. William McHenry, son and executor of Isaac McHenry, after his father's death, took possession of the land which had been surveyed off by Brady for said Isaac, and kept the possession by himself and his tenants, as he testified, about nine years. In another part of his testimony he says, he and his tenants kept possession of the land until it was sold by the sheriff to the present plaintiff, John Piper, which sale was perfected by sheriff's deed, dated 28th March, 1833. A judgment was entered in the Common Pleas of Indiana county, against William McHenry, executor of Isaac McHenry, deceased; a levy made on this land on *fi. fa.* to December Term, 1832; land sold on *vend. exp.* to March Term, 1833, to the present plaintiff, John Piper, for $210; and deed made to him by the sheriff, dated 28th March, 1833. After the death of Isaac McHenry, his executor, William McHenry, brought suit against William P. Brady, in the spring of 1814, to recover the $30 paid by Isaac McHenry, in his lifetime, to Brady, on the contract for this land. On the 15th December, 1815, judgment was entered, by confession, in favor of Isaac McHenry's executor, for £13 1s. 7½d., with interest from the 22d December, 1803; to be released, provided a title be made on the contract with Isaac McHenry within five months, and costs paid, and on the making of that title, credit to be given on that contract *pro tanto*, or so much as shall be due, &c. The title not being made, William McHenry, executor of Isaac McHenry, deceased, issued executions on his judgment, and collected the sum off Brady, amounting, as William McHenry testified, to over $60 dollars. An ejectment was brought by Henry Billington, trustee, &c., to June Term, 1840, to recover this land from John Piper and his tenant. A verdict was afterwards had in favor of Billington, to be released on payment of the sum due on the article and costs. The plaintiff contended that the suit brought by the executor of Isaac McHenry, deceased, in 1814, against Brady, to recover back the money paid by McHenry in his lifetime, followed by the collection of the same, was a disaffirmance of the contract, and a denial of the title of Brady, and the possession of McHenry afterwards was hostile to Brady's title, and the Statute of Limitations would run from that time, and confer a good title on McHenry.

The court, BURNSIDE, J., instructed the jury that the plaintiff had no case, and that their verdict ought to be for the defendants, and this is assigned for error.

*Banks*, for plaintiff in error, cited *Rush* v. *Barr*, 1 Watts, 120; *Piper* v. *Lodge*, 4 S. & R. 315.

[Piper *v.* Sloneker et al.]

*Drum*, for defendants in error, cited *Fitch* v. *Mann*, 8 Barr, 507; *Creswell* v. *Altemus*, 7 W. 566; *Ingersoll* v. *Lewis*, 1 Jones, 220; *Buckholder* v. *Sigler*, 7 W. & S. 161; *Union Canal Co.* v. *Young*, 1 Whart. 426; *McMasters* v. *Bell*, 2 Penn. Rep. 183.

The opinion of the court was delivered Oct. 30, 1854, by

WOODWARD, J.—Several conclusions, both of fact and law, may, for brevity's sake, be assumed in this case, without harm to the parties, to the testimony, or to arguments of counsel.

That William P. Brady had an equal interest with Thomas Billington in the warrant of 16th April, 1800, and good right to make the contract of sale with Isaac McHenry; that Henry Billington, from the date of the patent to him, held the legal title in trust, as well for Brady as the heirs of Thomas Billington, deceased, until the 9th June, 1842, when Brady released his interest to the patentee; that Isaac McHenry entered into possession of the land, and held it until his death, under the contract made with Brady, November 22d, 1801; that his son and executor, William McHenry, by himself and tenants, kept up that possession for the benefit of the father's estate, until the 28th March, 1833, when it was sold at sheriff's sale, on a judgment against William, as executor of his father, to John Piper; that Sloneker then succeeded to the possession, as Piper's tenant, and continued it till evicted by the Billington ejectment, instituted on the 5th June, 1840—these are all either conceded points, or plain and necessary deductions from the evidence, and hence it results, that Piper claims a possession *long enough continued* to confer title under the Statute of Limitations, but taken and maintained under the Billington title; it was never *adverse thereto*, and, therefore, never became a title.

But the plaintiff insists that it was adverse, and to prove this, points us to what he calls a rescission of the Brady contract, after which, he maintains, the possession became adverse and continued so for twenty-one years and more. Let us see on what ground this position rests.

It was in evidence, that on the 22d December, 1803, William P. Brady made a due-bill to Isaac McHenry for a balance on settlement of £13 1s. 7½d., which, it was alleged, was to apply as a payment on the contract of 22d November, 1801. After Isaac McHenry's death, William, as his executor, sued Brady on this due-bill before a justice of the peace, from whose judgment an appeal was taken, and on the 15th December, 1815, a judgment was taken, by the plaintiff, for the amount of the due-bill and interest, and with stay of execution for five months, " to be released," says the record, " provided a title be made on the contract with Isaac McHenry within that period, and on the

making of that title, credit to be given on the contract *pro tanto*, or so much as shall be due.   June 15, 1819, on motion of Mr. Alexander, judgment."

This is what is called a rescission of the contract.   But it could not be that, because it is an elementary principle of law, that he who would rescind a contract on account of the other party's failure to comply with conditions precedent, must be in no default himself, and both parties must be placed in the same condition they were in when the contract was made.   There was no time fixed in the article, at which Brady was to convey the title; but the purchase-money was to be paid within six years; and when the title should be made, whatever remained due of the purchase-money, was to be secured by bond and mortgage. These covenants as to the title and the mortgage, were dependent and concurrent; and if McHenry meant to rescind on account of Brady's failure, he should have made Brady's covenant precedent, by offering to perform his own.   But in 1815, the six years had expired, and all the purchase-money was due, without a tender or payment of which, he was not entitled to demand the title.   He was the party in default, and he could not rescind without the consent of the other, for that would be to release himself from a liability that was precedent and fixed.   Nor could he rescind without surrender of the possession, which was never made nor offered.   So far from intending a rescission of the contract, he retained the possession, and obtained his judgment on terms which look more like compelling specific performance of it, than like an abandonment.   Thomas Billington having died, the title was probably in a condition which rendered it inconvenient for Brady to convey, and he made no attempt to do so, because the purchase-money was not forthcoming.   McHenry, meanwhile, recovered the money paid, and then the parties stood, as vendor and vendee always stand in articles of agreement when the vendee is in possession and the purchase-money unpaid; the one, trustee of the title, the other of the purchase-money. Between parties so situated, the Statute of Limitations has no application, no more than between landlord and tenant.   Neither can appropriate the benefits of the bargain, and escape its burdens, by what is called here a rescission of the contract, and a setting up of the statute.

But this is not all.   If McHenry's judgment was in affirmance of the contract, so was Piper's defence to the Billington ejectment of 1840, for there a conditional verdict was rendered for the plaintiff, to be released on payment of the purchase-money.   That record does not look as if the contract which was interposed as a defence, had been rescinded.   It must have been set up as a valid and existing equity, by the party who now repudiates it, else he could not have obtained the chance of

[Collins v. Collins.]

holding the land, on the very reasonable terms of paying the purchase-money. Possession, taken under a contract of purchase, the covenant of the purchaser never performed, but the possession retained, and when the holder of the legal title sues for the possession, the equities which spring from the contract asserted successfully by the present plaintiff; these are the circumstances in which he now assumes the desperate position, that the contract had been rescinded in 1815, and that he and McHenry had been ever since, holding adversely. It cannot be sustained. There is nothing in the cause, either of law or evidence, to give it countenance. Mr. Piper, having preferred to turn out, rather than pay the purchase-money, he certainly cannot regain the possession without paying it.

Perceiving no error in the points ruled, the judgment is affirmed.