## Case No. 2,599.

CHAPIN et al. v. NORTON et al.

[6 McLean, 500.] [1]

Circuit Court, D. Michigan. June Term, 1855.

CONTRACT—RIGHT TO ABANDON—DAMAGES FOR BREACH—ACCOUNT STATED.

1. Under a contract made by the complainants with the defendants, the complainants agreed to purchase all the lumber sawed by the defendants on Grand river, on the terms specified, taking it at the mill and transporting it to Chicago, &c. Among other conditions, the complainants agreed to furnish supplies for the hands of the defendants, &c., which, after about a year, they refused to do; on which the defendants abandoned the contract.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

2. Where one party refuses to do a certain thing, under the contract, which was necessary to enable the other party to perform his part of the contract, he may abandon the contract. And in such case the party first refusing, is liable to the other for damages.

3. But such damages must be limited to the immediate consequences resulting from the refusal to perform the contract, and cannot extend to probable profits which might have been realized if the contract had been carried out.

4. The party who abandoned the contract on the failure of the other party to perform in a material part, is not liable for damages.

5. A large quantity of the lumber being in possession of the defaulting party, it would seem that he, having repudiated the contract, cannot afterwards claim the benefit of the contract, in disposing of the lumber on hand. Under any circumstances he would be entitled to a reasonable compensation for selling the lumber.

6. In the process of a continuing contract, if accounts are received and adjusted without objection, it is too late to make an objection at the trial.

7. And where an inconvenience is suffered by the delay of the other party, notice should be given.

Willing & Gray, for complainants.
Mr. Lathrop, for defendants.

OPINION OF THE COURT. This is a bill in chancery, in which the complainants ask the foreclosure of a mortgage. On the 20th of February, 1850, the parties entered into an agreement substantially as follows: —The complainants are lumber merchants and reside in Chicago, and they entered into an agreement with the defendants, who owned a steam saw mill on Grand river, in the state of Michigan, and were engaged in sawing lumber, to purchase all the lumber that they should manufacture at their mill, for five years, on the following terms: 1. Five dollars per thousand feet was to be paid for merchantable; two dollars fifty cents for culls, and one dollar per thousand for pine laths. 2. The complainants were to receive the lumber at the mill and sell it in Chicago, and in addition to the above prices, were to pay the defendants one-half the net profits. 3. They were to procure vessels to take the lumber from the mill to Chicago, the amount to be ascertained by tally on delivery at Chicago. 4. The complainants were to furnish to the defendants all the supplies needed to carry on their mill. 5. The lumber to be paid for on the receipt of the price of sale. 6. For all moneys advanced by complainants, they were to receive interest at ten per cent. 7. The expense of the transportation and all other expenses of sale, &c., were to be deducted out of the proceeds, before the division of the profits. 8. At the close of each month an account of sales was to be rendered to the defendants, and at the close of the year a settlement was to be had. At the date of the agreement, the complainants loaned to the defendants two thousand dollars and took from them a mortgage for the payment, with interest at ten per cent., in one and

two years; and also conditioned for the repayment of all advances made under the contract, and also for the performance of the contract. In November, 1851, the defendants refused to deliver any more lumber under the contract, alleging that the complainants had broken it by a refusal to furnish supplies. In February, 1852, the defendants commenced an action at law against the complainants, in Ottaway county, to recover damages for the alleged breach of the contract. That suit, under the act of congress, was removed to this court, and is still pending. In the fall of 1852 this bill was filed, to foreclose the mortgage. The answer admits the execution of the mortgage, but alleges that complainants first violated the contract, which released the defendants from all obligation under it. And they claim damages from the complainants.

In order that the decision of this case may finally settle the controversy, it was agreed by both parties that the matter between them, arising under the contract, shall be finally settled in this suit, and a decree entered against either party as the court shall decide. The complainants claim the mortgage and interest, amounting to the sum of two thousand eight hundred and sixty-six dollars and sixty-six cents; and also a balance on the account current, including interest, amounting to the sum of one hundred and seventy-nine dollars and forty-seven cents. These items make the sum of three thousand forty-six dollars and thirteen cents. And a large amount is claimed as damages for the failure of the defendants to perform the contract. The defendants claim damages from the complainants for breaking the contract, by refusing to furnish the necessary supplies, which compelled them to sell their lumber at a lower price than was stipulated in the contract, in order to continue their manufacture. And they allege that at the close of the fourth quarter, as appears by their own account, the complainants had on hand 573,122 feet of lumber, for which they have never accounted. And they say the interest and discounts have been regularly charged by them. The expenses charged are, they aver, unreasonable, and ought not to be allowed. And in the answer damages are claimed for stopping their mill by an injunction, obtained by complainants. Breaches of contract are also set up, as a ground for damages, in not sending for the lumber in proper time, by which means large amounts of it were piled upon the wharf at the mill, which caused great inconvenience and damage to the defendants. The accuracy of the accounts rendered by the complainants are questioned, and damage was suffered by the defendants, it is averred, by the complainant's selling at a longer time than was agreed on.

Before the question of damages is considered, it is important to ascertain whether the complainants or defendants are respon-

sible for breaking up the contract. On this point the evidence is clear. Every one acquainted with the business in which the defendants are engaged, must be aware that it requires a large expenditure. A large number of hands must be constantly employed in procuring the logs and bringing them to the mill, and in sawing the lumber. Teams and vehicles must be used in the business. All these must be supported and wages paid to the hands. It appears thirty-five hands were employed in the above business, and sometimes, it is supposed, a greater number. Supplies, it appears, could not be purchased at Grand river, nor its vicinity, and the nearest market where the necessary articles could be purchased was Chicago. These supplies consisted of provisions for the hands, food for the cattle, and several expensive articles used in running the mill. And in the agreement the complainants undertook to furnish these supplies. We see from the account rendered that in the course of a year they required a large expenditure. From the nature of these supplies, the manufacture of lumber must stop if they were withheld. And, as appears from the evidence, they were withheld by the complainants. The pretence assigned was, that they had already made large advances under this head and could make no more. At this time, it appears, they had in their possession lumber that would more than cover the amount of the advances. And it also appears that large quantities of lumber were piled up at the mill, which it was their duty to remove. They must have known that withholding supplies at the beginning of winter, without notice, must stop the mill and greatly embarrass, if not ruin, the defendants.

From the evidence it appears, that the complainants were desirous, not only to get rid of the contract, but to possess themselves of the defendants' property. This motive was so often expressed to various persons at Chicago, and elsewhere, and so carried out by their acts that, reluctantly, we are brought to the conclusion that such was their intention. And to bring out this result, the defendants were to be led on unsuspectingly by certain devices, so that the refusal to furnish supplies would be most injurious to the defendants and beneficial to the complainants. The facts proved, necessarily lead to this conclusion. It is unnecessary to say, that in all contracts where certain things are to be done by the parties, a failure by one party will justify the other in abandoning the contract. But in a matter where the performance of the one party was necessary to enable the other party to perform, as in this case, the contract may be considered as abrogated. This view settles the question against the complainants' claim for damages, by reason of the acts of the defendants. They must stand upon their mortgage and matters of account.

The complainants claim mortgage money

and interest together, with a balance on account current of one hundred and forty-seven dollars and interest—the latter item may be affected by some other items in the account current, which are disputed. The other claims, except the one for interest, are cut off by the breach of the contract on their part. In their answers the defendants claim damages on account of the injunction in this case, which necessarily suspended the operation of their mill, and the cutting or removing of timber from their lands. This was no doubt very injurious to their interests, but it was an injury for which no redress can be given. The suspension resulted from the allowance of the injunction; and although the complainants were active in procuring the writ, yet they are protected by the act of the court. The counsel for the defense yields this point. Nor are the defendants entitled to damages for the reduction of the lumber received at Chicago, by the tally at that place. This claim is also very properly yielded by the defendants' counsel. The contract stipulates that the Chicago tally shall fix the amount of lumber received, and this amount must stand, unless a mistake or fraud shall be made to appear in taking it. It seems to be usual at Chicago to make a deduction in the lumber for shrinkage, and several witnesses think the amount deducted on this account not greater than usual. It does not appear that the charges of expense of the transportation of the lumber to Chicago, or in the tally and sale of it at that city, was objected to by defendants, when the monthly or quarterly accounts were rendered; and it is too late to raise the objection at the hearing, unless fraud or mistake can be shown. On the 1st of December, 1851, it appears the complainants had on hand 738,508 feet of lumber, and 98,450 pieces of lath; and the defendants insist that as complainants refused to go on with the contract, by a failure to furnish supplies, they are not entitled to the advantage arising, under the contract, for the sale of this lumber. There is much force in this suggestion. But the complainants could not be required to sell the lumber, without a reasonable compensation. It would seem proper that, as the complainants refused to perform their part of the contract, so as to authorize an abandonment of it by the defendants, in regard to the lumber on hand, they could not go on under the contract. This point is not now finally decided, but reserved.

There can be but little doubt that the defendants are entitled to damages for the refusal of the complainants to furnish supplies. But these damages must be limited to the act of refusal, and the immediate consequences resulting therefrom. The injury cannot be extended to the profits arising from the contract, if it had been performed by the complainants. Such damages are remote and contingent. But the contract was abandoned by defendants, which, under the circumstances, would limit their claim, as stated. The dam-

ages claimed on account of the large amount of lumber which accumulated at the mill, covering the wharf to the great inconvenience and damage of the defendants, by reason of the complainants' neglect to remove it, might have constituted a ground for allowance had the complainants been notified of the fact and requested to remove it. But, without such notice, there seems to be no ground for an allowance. The loss by fire of sixty thousand feet of lumber, at the mill, cannot be charged to the complainants, or any part of it. Interest is charged, in the current account, for payments made under the contract. If these payments were made in advance, the charge is a proper one; but if they were made on a sale of the lumber, as the contract required, no interest should be charged. The account current is not before me, but a succinct statement of items taken from the account. Without that account, a final decision is impracticable. Nothing more can be done than to require a report from a master on the items allowed to the defendants. It appears from the briefs, that from the 20th of February to the 1st of May, 1852, no account of sales was rendered, but only a statement of the profits. This would be unsatisfactory, if the complainants shall be required to account for the sale of this lumber under the contract.

It is therefore ordered that the account current and all the evidence in this case, be referred to a master in chancery, who shall report at the ensuing term, on the claims for damages as above stated. And the master will specially report: First. What would be the proceeds of the lumber on hand on the 1st December, 1851, at the current prices in Chicago, after allowing the usual per cent. for selling, the cost of transportation, and the money paid by the complainants under the contract. Second. What amount of damages was sustained by the defendants, under the restrictions stated, for refusing to furnish supplies. Third. What, if any, deductions should be made from the items of interest charged in the account current. Fourth. Any items incorrectly charged in the account current, through mistake or otherwise.