[S. F. No. 76.   In Bank.—December 14, 1897.]

SAN FRANCISCO BRIDGE COMPANY, Respondent, v. DUMBARTON LAND AND IMPROVEMENT COMPANY, Appellant.

Assumpsit—Quantum Meruit—Insufficient Defense—Special Contract for Construction of Levee—Nonperformance—Nonpayment of Installments.—The failure to make agreed monthly payments, under a special contract for the construction of a levee, is a substantial breach thereof by the one for whom it is constructed, and justifies the contractor in refusing to proceed further thereunder; and he may thereupon maintain an action of *assumpsit* upon a *quantum meruit* to recover the value of the work and labor done; and plaintiff's nonperformance of the special contract cannot be maintained as a defense to the action, it appearing that the defendant was first in default.

Id.—Continuance of Work after Default—Reliance upon Promises.—The fact that the plaintiff continued work under the contract after the default of the defendant does not affect the right of the plaintiff to cease work upon continued nonpayment; but plaintiff had the right to rely for a reasonable time upon the promises of defendant to pay.

Id.—Determination of Amount Due under Contract.—Where there appears to have been no difficulty in determining the amount due under the contract, the fact that the contract did not expressly provide a specific method of determining the amount due at the end of each month for the work already performed is immaterial.

Id.—Evidence—Importance of Completion of Contract in Time Limited—Present Benefit to Defendant of Work Done.—The defendant, having first broken the contract by nonpayment of the installments due thereunder, cannot insist that plaintiff should go on and complete the contract within the time specified; and there is no material error in excluding evidence to the point that plaintiff was informed

that it was important to construct the levee within the time specified in the contract, nor in excluding evidence on the question whether or not the work done on the levee is of any present benefit to the defendant, and whether the defendant has sustained any loss from the fact that it was not completed within the time specified.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

John H. Durst, and Louis F. Dunand, for Appellant.

R. Percy Wright, and T. C. Coogan, for Respondent.

McFARLAND, J.—This is an appeal by the defendant from a money judgment in favor of plaintiff, and from an order denying a new trial. Each party is a corporation.

The action is brought to recover upon a *quantum meruit* for certain work done by the plaintiff upon a levee on the land of defendant, and for certain materials furnished by plaintiff and used in said levee. It was averred that said work and materials were reasonably worth the sum of $15,000; that defendant has paid thereon $2,000, and no more; and that there is due the sum of $13,000, for which judgment is prayed. At the trial there was a stipulation as to what the actual value of the said work and materials was, and in accordance with said stipulation it was found to be $9,983; and, deducting the $2,000 paid, judgment was rendered for plaintiff for $7,983. This finding was amply sustained by the evidence; and the judgment was correct, unless a certain special defense set up by defendant can be maintained.

The answer sets up as a special defense that the said work was done by plaintiff under a special written contract entered into by the parties on the twenty-second day of April, 1892, by which it was covenanted by the plaintiff that, "in consideration of the promise of said party of the second part hereinafter set forth," it would build and construct for the defendant a certain levee, in front of certain lands of the defendant, the levee to be constructed of a certain size, and in a certain manner, and to be about 28,000 feet long. In consideration of the covenants of the plaintiff, the defendant agreed to pay it the sum of $21,500, "fifty

(50) per cent of said sum to be paid in monthly payments as the work progresses, in amounts proportioned to the amount of work and labor done and material furnished and used about said work at the time such payments are made," the balance to be paid after the work should be complete. The work was to be done "between the first day of May, 1892, and the thirtieth day of October, 1892." The plaintiff commenced the construction of the levee on the tenth day of May, 1892, and proceeded to construct the same in accordance with the provisions and requirements of said contract. On the tenth day of June, when the first monthly payment was due, the defendant failed to make said payment or any part thereof. It also failed to make a payment on the tenth day of July; but on the fourth day of August, 1892, the defendant paid the plaintiff $2,000, being the amount of the two payments which were delinquent on the 10th of June and on the 10th of July. But no payment was made on the 10th of August, nor was any other payment thereafter made at all by the defendant, although it was urged frequently by plaintiff to pay said unpaid monthly installments, and defendant continuously promised to pay the same. Defendant employed an engineer to examine the work, and to report the amount done, and he, on October 17th, made his report showing the amount of work done and the amount due on the monthly installments; but it appeared, from the fruitless efforts of the plaintiff to have said payments made, that defendant could not or would not pay the same, and thereupon the plaintiff notified the defendant that unless the overdue installments were paid the work would be abandoned, and that if payment was not made before October 30th, which was Sunday, operations would be suspended. The defendant still refusing and neglecting to make any such payments, the respondent, on October 31st, elected to treat the contract as at an end, quit work, and refused to proceed any further with it. Thereupon this action was brought to recover for the value of the work already done.

The failure to make the monthly payments was a substantial breach of the contract by defendant, and justified the plaintiff in refusing to proceed further thereunder; and the defense set up by the defendant of a special contract cannot be maintained. The case is clearly within the doctrine of *Cox v. McLaughlin*, 76 Cal.

60, 9 Am. St. Rep. 164, and *Porter v. Arrowhead Reservoir Co.*,
100 Cal. 500. We see nothing in the present case that takes it
out of the rule announced in those two cases; and, therefore, it
is unnecessary to notice the numerous cases to the same point
cited by respondent from other states. The defendant cannot
defeat the claim of the plaintiff to recover the reasonable worth
of his work upon the ground that the levee was not completed
within the time mentioned in the contract; because the defendant
itself was first in default. It cannot defeat the plaintiff, as was
said in the note to *Cutter v. Powell*, 6 Term Rep. 320, 2 Smith's
Lead. Cas. 46, "by setting up a contract which he himself has
broken by not paying at the appointed time. The nature of the
action and the legal ground of recovery, therefore, are precisely
the same as where there has been in fact no special contract at
all." The defendant, having failed to comply with the condition
of payment on its part, cannot insist that the respondent should
proceed and complete the contract within the time specified. As
was said in *Tyson v. Doe*, 15 Vt. 571: "To allow the defendant
to insist on that stipulation, whilst he repudiates others, would
be to enforce a different contract from that which the parties
enter into." Neither are the rights of plaintiff affected by the
fact that it did not stop work immediately after the failure of
defendant to make the first payment. It had a right to rely for
a reasonable length of time, at least, upon the promises of the
defendant to pay. It was said by the supreme court of the United
States in *Canal Co. v. Gordon*, 6 Wall. 569, that although the
plaintiffs in that case "adhered to the contract, and pursued the
work longer than they were bound to do, when they retired they
were fully justified and had a clear equity to be paid a fair com-
pensation for the work they had performed." We see nothing
in the point that the contract did not expressly provide a specific
method of determining the amount due at the end of each month
for the work already performed. There seems to have been no
difficulty in determining the amount that was due for the first
two months; and defendant's own engineer in October reported
the amount then due, so that there was no question on that point.

We do not see any material error committed by the court in
sustaining objections to certain evidence offered by the defend-
ant. The first four questions noticed in appellant's brief, asked

of the witness Rohrbacher, were all to the point whether or not the witness had informed the president of the plaintiff that it was important that the levee should be built within the time specified in the contract; and we do not see how an answer to the questions would have added anything to the terms of the contract itself. The other questions concerned the point whether or not the work done on the levee "is" of any present benefit to the defendant, and whether it has sustained any loss from the fact that the levee was not completed within the time specified in the contract; but the action is to recover the value—the extent of which in money is stipulated in the record—of the work and labor performed by plaintiff at the instance and request of defendant, and, as we have before seen, the defendant having first broken the contract by not performing the covenants, cannot, under the circumstances of this case, insist upon detriment caused by the failure of plaintiff to do something which was to be done only upon condition that defendant performed its part of the contract. We see no further points necessary to be specially noticed.

The judgment and order appealed from are affirmed.

Harrison, J., Van Fleet, J., and Garoutte, J., concurred.

'TEMPLE, J., dissenting.—I dissent. Defendant appeals from the judgment and from an order refusing a new trial. The action was to recover for labor and materials done and furnished at defendant's request.

The answer sets up a special contract under which it is charged that the work was done and materials furnished. Also that plaintiff has not performed said contract. The answer also denies that defendant is in default, and claims damages from plaintiff for its alleged violation of the contract.

In the written contract plaintiff agreed that it would, between the first day of May, 1892, and the thirtieth day of October, 1892, "construct, erect, and build for the said party of the second part . . . . a levee with the necessary dams and culverts . . . . a total distance of about twenty-eight thousand (28,000) feet," etc.

The defendant agreed, in consideration of the premises, "that if the said party of the first part shall keep and perform all the covenants herein written to be kept and performed by it, it will pay to said party of the first part, as and for full compensation

for all the work herein agreed to be done by it, the sum of twenty-one thousand and five hundred ($21,500) dollars in gold coin of the United States, fifty (50) per cent of said sum to be paid in monthly payments as the work progresses, in amounts proportionate to the amount of work and labor done and materials furnished and used about the work at the time such payments are made," etc.

There was no provision for ascertaining the amount of work which was done or materials furnished at any particular time when progress payments should be due. There was no engineer or method provided for making estimates.

The findings were for the plaintiff on every point. In its motion for a new trial the defendant specifically claimed and pointed out every finding of fact as unsustained by the evidence, and also claimed that every conclusion of law was erroneous. Several rulings rejecting evidence offered by the defendant are also excepted to.

It appears that one John Hackett was interested with plaintiff in the contract, and all the work done on the part of the plaintiff in performance of the contract was done by him. He commenced the work on the tenth day of May, using one dredger.

From and after the middle of June the plaintiffs were claiming that defendant should make the monthly payments, and, when so urged, the defendant objected that they did not know the amount of work done. Captain McMullen testified: "They said they didn't know how much had been done, and we told them they had better find out how much had been done."

Plaintiff never did furnish a statement of the amount of work which had been done, or of the amount which it claimed was due. Finally, on the fourth day of August, defendant paid $2,000, which was accepted by plaintiff. The payment of this money, and its acceptance, would estop both parties from denying that the contract was then in full force and binding in all its terms upon each.

Captain McMullen, president of plaintiff, testified that he made several demands in September for further payments, and that as an excuse they sometimes said "that they didn't know how much was done; that they hadn't had a report of it, and I insisted that they get a report of it." This witness also admitted

that when they pressed hardest for money, Mr. Rohrbacher insisted that they were behind time.

Captain Hackett testified that his company was jointly interested in the work with plaintiff and that his dredger did the work and he looked after the business. After testifying for plaintiff that there were no complaints about delay, he was asked if there was any request to put on another dredger; he said: "Mr. Boske and I had a talk about it; we talked several times about it; we had an idle dredger we could have put on there. By 'we' I mean our company."

"Q. State what was said. A. Well, we had a general talk on several occasions, and I said: 'If these people would show a disposition to pay us as we went along, we would put on another dredger,' but I wanted to take the one we had working there off long before we did. Q. Why? A. Well, we didn't get our money." Again he was asked by plaintiff: "Q. If the money had been paid, would there have been any difficulty in completing the contract? A. Not the slightest. If they had shown a disposition to pay that money we would have completed the work within the time easily; no trouble at all."

Captain McMullen admitted that they did not feel bound to do the work within the time stipulated. He also said that defendant never declined to pay, but simply could not get the money.

The question in the case is, Can the plaintiff recover upon a *quantum meruit?* This depends, I think, upon the question as to whether plaintiff could rightfully rescind the contract.

We have seen that plaintiff was repeatedly demanding the progress payments; that defendant was complaining that the work was not being prosecuted as it should be, that defendant did not pay, and that plaintiff, giving nonpayment as an excuse, willfully neglected to so prosecute the work that it could have been completed at the stipulated time.

Plaintiff furnished no statement of the amount of work done, although it is admitted that one was demanded. The contract did not allow defendant to furnish a superintendent, and it did furnish no one. Boske, who lived on the land, merely examined to see if the work followed the line of the survey. He was not an engineer, and is not shown to have had the capacity to make

the estimates. It was the duty of plaintiff to furnish such estimates and to make known what it claimed to be due, otherwise the defendant could never know whether payments made were sufficient. The facts upon which the liability of the defendant rested were peculiarly within the knowledge of plaintiff. (5 Am. & Eng. Ency. of Law, 528; *Chapin v. Norton,* 6 McLean, 500.)

As these statements, though demanded, were never furnished, I think defendant was certainly not in default prior to the 17th of October, when a statement was furnished by an engineer employed by itself, to which plaintiff agreed. But if it be held otherwise, it would make no difference; conceding, for the argument, that defendant was in default as to payments, and that its failure to pay was such a breach of the contract as would have justified plaintiff in rescinding, still it did not rescind. The rule is, that this right must be exercised promptly. Of course, if not so exercised by the party entitled to rescind, the contract remains binding in all its provisions upon both parties. The party entitled to rescind cannot go on performing after the breach and reserve his right to rescind if, in the light of subsequent events, he deems it will then be for his interest to rescind. Both must be bound, or neither will be.

Now, it is practically admitted, both by McMullen and Hackett, that plaintiff made no effort to comply with that part of their contract which required them to complete the work before the thirtieth day of October, and they gave as a reason that defendant did not pay the installments as they fell due. But in no view of the law were they justified in so doing. If they had a right to rescind, because of a failure to perform on the part of defendant, and did not, such failure constituted no excuse for their dilatory prosecution of the work. They should have performed the contract according to its terms, or should have stopped work. Under their construction of the contract, they could put men and machinery upon this work when otherwise they would have been idle, and then make defendant pay for it although it could reap no benefit from it.

On the 17th of October, for the first time, plaintiff made a lawful demand upon defendant for the money due on the progress payments, and upon its failure to pay them notified it that if the

money was not paid by the thirtieth of October plaintiff would abandon the work.

By the terms of the contract the work was to be completed "between the first day of May, 1892, and the thirtieth day of October, 1892." Unless, therefore, defendant was in default, there was nothing to rescind on the thirtieth day of October. The very notice itself is an admission that plaintiff had been guilty of such a breach of a contract as would prevent rescission on its part. Where a party is himself in default he cannot rescind because of a breach by the other party. (Story on Contracts, secs. 1337, 1338; 2 Parsons on Contracts, 834; 21 Am. & Eng. Ency. of Law, 77; *Piper v. Sloneker*, 2 Grant Cas. 113; *State v. McCauley*, 15 Cal. 458; *Kokomo Straw Board Co. v. Inman*, 11 N. Y. Supp. 329; 58 Hun, 603.)

If he could do this, he could thereby avoid liability for his own default and recover full compensation for work which, because of his default, may be of no value to the other party. If the other party has been guilty of a breach also, he is put to his action for damages, in which there may be recoupment because of his default. (*Hard v. Seeley*, 47 Barb. 428; *Beaty v. Harkey*, 2 Smedes & M. 563; *Born v. Schrenkeisen*, 110 N. Y. 59; *State v. McCauley*, 15 Cal. 458; Parsons' on Contracts, 680; *Fountain v. Semi-Tropic L. & W. Co.*, 99 Cal. 677.) Under such circumstances, he could not recover the value of his work and labor as rendered at the request of defendant, but he could have completed the work and sued for his money with damages, leaving to defendant the right to recoup. If he abandoned the work, he could recover nothing unless defendant proceeded to make use of the levee, in which case he could recover the value of the levee and not of the work at contract rates.

Defendant offered to show that it had made no use of the levee and that it was worthless. The court rejected the evidence, and the ruling is assigned as error. If that evidence was material, it must be assumed on this appeal that the defendant could have made the proof.

Where a person contracts to do work by a certain time, at law time is always of the essence of the contract.

Counsel contend that there never was a breach of the contract because the defendant was always in default and could not

have complained of nonperformance on the part of plaintiff. I see no reason why the rule would not work both ways, but there is nothing in the suggestion. The case most relied upon on this point is *Smith v. Corn*, 3 Misc. Rep. 545; 23 N. Y. Supp. 326. It was upon a building contract to recover for an installment which accrued in the progress of the work. The contract itself provided a remedy in case the work was not prosecuted diligently. The owner could step in and do the work himself, and charge the contractor with the cost. The owner did not avail himself of the privilege given him by the terms of the contract, but permitted the contractor to go on with the work and refused to pay the installment. The court held that defendant could not permit the plaintiff to go on with the work and then refuse to pay, and being himself in default he could not rescind. The contractor was permitted to sue for the installments, with the privilege on the part of the defendant to recoup. The plaintiff in a supplemental complaint alleged prevention. The case is on no point an authority for this plaintiff.

The court said: "Defendants had suffered the plaintiffs to go on and complete the work which entitled them to the payment, and it then became due and payable, subject only to deductions for losses sustained by delay. Under the contract the defendants might have given notice to plaintiffs and proceeded to complete the work themselves, but they did not avail themselves of this privilege, but treated the contract as still in force and suffered the plaintiffs to go on, and their claim is limited to damages for not performing the work for such installment within a reasonable time." So here the plaintiff cannot avoid the defendant's claim for damages for its default. The fact that defendant had been guilty of a breach of the contract would not prevent it from recovering damages for plaintiff's breach.

The court further said, as stated in respondent's brief, that plaintiff was not bound to go on with the work after defendant refused to pay the installments. So here, perhaps, before plaintiff had made default it could have refused to go on, but if it did go on it elected to continue the contract in force and was bound itself by all its terms.

That case is not authority for this proposition, however, for there the remedy of defendant for such a breach was specially

provided for in the contract. If the defendant did not avail himself of that remedy he waived performance.

*Graf v. Cunningham,* 109 N. Y. 371, is an authority against plaintiff. It holds that Graf could not rescind for the breach of defendant because she was herself in the wrong. *Strack v. Hurd,* 62 Hun, 618, 28 Abb. N. C. 142, 16 N. Y. Supp. 566, simply holds that the plaintiff not being at fault could rescind because the defendant declined to perform.

It is suggested that the refusal on the part of defendant to pay the installments was a refusal on its part to go on with the contract, which justified plaintiff in holding that defendant had abandoned it. The line of cases which are sometimes relied upon as holding a doctrine similar to this are discussed by Judge Ross in *Cox v. McLaughlin,* 52 Cal. 590. It obtains only where, by refusing to pay, a party indicates a determination to proceed no further with the contract.

Captain McMullen testified that the defendant never showed a disposition to refuse to go on with the contract, but did not have the money and put them off with promises.

It is contended that plaintiff was in no default because his time had not wholly elapsed. He elected to rescind on the last day, and it was not open to defendant to assume a future default, or even to show that performance had become impossible. This position is untenable for two reasons: 1. Plaintiff did not have the thirtieth day of October on which to complete performance. The contract was to have been wholly performed before that day—between the 1st of May and the 30th of October. 2. Plaintiff was shown to have been in default because it had become wholly impossible for it to perform. It had rendered it impossible by its willful neglect; but it would have made no difference if it had become impossible without its default. It not only agreed that it would perform within the time but that it could. Defendant offered to prove that performance had become absolutely impossible long before the 17th of October, when the first valid demand was made. The court refused to receive the evidence, and this ruling is before us for review.

The following authorities abundantly establish that the court erred in refusing to receive the evidence, and also that plaintiff was guilty of a breach in this respect: Bishop on Contracts, secs.

826, 1426, 1440; Wharton on Contracts, sec. 312; 3 Addison on Contracts, 830; *Bloomer v. Bernstein,* L. R. 9 Com. P. 588; *Poirier v. Gravel,* 88 Cal. 79; *Wolf v. Marsh,* 54 Cal. 228; *Lovell v. St. Louis etc. Ins. Co.,* 111 U. S. 264; 2 Wharton on Contracts, secs. 309, 885, and note.

It is said that defendant has not pleaded the waiver on the part of plaintiff. It was not necessary that it should—admitting that it is ever necessary. Waiver is no part of the defendant's case. The question is as to the right of the plaintiff to rescind, or to refuse to go on because the defendant has abandoned its contract.

I think that the judgment and order should be reversed, and a new trial ordered.

Henshaw, J., and Beatty, C. J., concurred in the dissenting opinion.

Rehearing denied.