ACKERMAN et al. v. SANTA ROSA–VALLEJO TANNING CO.

(Circuit Court of Appeals, Ninth Circuit.   May 5, 1919.)

No. 3230.

1. SALES ⊜⟶174—BREACH BY BUYERS—RIGHT TO INSIST SELLER SHOULD HAVE PERFORMED.

Where the seller of leather backs shipped an installment in accordance with the contract, and three days after payment for the installment was due the buyers announced their intention to continue to hold back payment until the order was completed, the seller had a right to stand on the terms of the contract and refuse performance until the buyers themselves performed, and the latter, having failed to comply with the terms of payment, cannot insist the seller should have proceeded and completed the contract in the manner specified.

2. SALES ⊜⟶179(4)—DELAYED ACCEPTANCE OF GOODS—WAIVER OF DEFECTS AND CONTRACT REQUIREMENTS.

Delayed acceptance by the buyers of goods once rejected was a waiver of defects and of contract requirements as to quality of the merchandise.

3. SALES ⊜⟶82(1)—CONSTRUCTION OF CONTRACT—PAYMENT.

A contract for the sale of leather backs, reading, as to payment, "2%— 30 days f. o. b. Vallejo," required payment within 30 days of the date of shipment from the seller's tannery, and, if paid sooner, called for a deduction of 2 per cent.

4. SALES ⊜⟶54—TIME AS OF ESSENCE.

As a rule, the parties to mercantile agreements, as contracts of sale between dealers, are held to have intended to make time the essence of the contract.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Robert S. Bean, Judge.

Action by J. E. Ackerman and Max Brummel, individually and as copartners doing business under the firm name and style of Ackerman & Brummel, and Ackerman & Brummel, a copartnership, against the Santa Rosa-Vallejo Tanning Company. To review a judgment for defendant, plaintiffs bring error. Affirmed.

This is an action on a contract for purchase and sale of leather backs. The cause was tried without a jury. Findings and conclusions were made in favor of the tanning company, defendant in error. Ackerman & Brummel, plaintiffs in error, brought writ of error.

The contract in question was entered into December 16, 1915, and is in the form of a letter addressed to Ackerman & Brummel, and signed by the Santa Rosa-Vallejo Tanning Company, per E. W. Hurgren, president. By the terms of the contract the tanning company agreed to sell, and Ackerman & Brummel agreed to buy, 1,000 sole leather backs, with an option of 2,000 additional at $41.50 per 100 pounds "less 2 per cent. f. o. b. Vallejo—30 days date of arrival Boston." On August 12, 1916, through correspondence the terms of the contract were changed so as to read "2 per cent.—30 days f. o. b. tannery." On March 3, 1916, the tanning company invoiced and shipped to Ackerman & Brummel 1,000 sides of leather. On August 23d, an invoice of 255 sides was issued by the tanning company and contained the words: "Terms: 2%—30 days f. o. b. Vallejo." No other shipments were made. In a letter dated September 12th, addressed by the Tanning Company to N. W. & A. L. Friedman, who were the representatives of Ackerman & Brummel at San Francisco, the

tanning company advised Friedman that another shipment of leather was ready for delivery, and requested Friedman to be in Vallejo to receive the leather on the date of the shipment. Friedman went to Vallejo, and on his return to San Francisco on September 15, 1916, wrote to the tanning company that the leather inspected did not meet the specifications provided for under the contract, and that it was necessary to reject the same. A few days later, September 18th, Friedman again wrote the tanning company, offering to find a market for the rejected leather at 43 cents a pound; but the tanning company refused the offer, and on September 19th telegraphed to Ackerman & Brummel at Boston as follows: "Had shipment leather ready last Friday. As matter of courtesy asked Mr. Friedman to inspect same before shipment. He examined part of lot and said it was not satisfactory. We insist it is up to requirements in all respects. To avoid delay and future difficulties please name another representative here to inspect the shipment. Advise by wire your wishes."

Ackerman & Brummel, under date of September 20th, wrote the tanning company, acknowledging receipt of the telegram, and saying the matter must be left in the hands of Friedman to pass upon the shipment. Five days afterwards, September 25th, Ackerman & Brummel, by letter to the tanning company, acknowledged receipt of the leather invoiced on August 23d and said: "We have had such an exceptional amount of trouble in securing this leather from you that we propose to hold back payment on this bill until you make another shipment, and as soon as we receive the other shipment we will pay you this bill immediately, and will continue to follow this mode of payment until your order is completed." The August shipment was invoiced on the 23d of that month, and the leather was shipped on the 22d. On September 25th, Friedman wrote the tanning company to the effect that he had received a communication from Ackerman & Brummel, inclosing a copy of their letter to the tanning company, and expressing regret that he (Friedman) was unable to accept the last shipment of leather. The next day the tanning company wrote to Friedman, acknowledging receipt of a letter of September 20th from Ackerman & Brummel, in which they had referred to the acceptance and rejection of the leather by Friedman, In this letter the tanning company asked a re-examination and acceptance of the leather, and stated that it fully met all requirements of the agreement.

On September 27th Friedman again wrote to the tanning company, stating that the leather was not of the proper quality and color, and on the following day the tanning company replied, insisting that it was in accordance with the terms of the agreement. On October 9th the tanning company wrote Ackerman & Brummel, acknowledging receipt of their letter of September 25th, already quoted from, in which Ackerman & Brummel notified the tanning company that they intended to hold back the payment on that and other bills. In the letter of October 9th was a statement that, if the money due for the August shipment was not paid without further delay, suit and attachment for the full amount due and damages would be brought. The letter continued as follows: "The 'other shipment' which you mention was, as you know, repeatedly tendered by us in accordance with our contract and was by you rejected. We feel that your course in this matter is prompted by a disposition to take an advantage. You have rejected leather which is fully up to the contract, and you now, without any excuse therefor, arbitrarily refuse to pay us for the consignment which you received and which you concede is of the quality called for. We cannot tolerate such defiance of the terms of your contract, and we propose to insist upon prompt payment in accordance with the terms of your agreement." On October 11th Friedman wrote to the tanning company as follows: " *  *  * As long as the leather for Ackerman & Brummel is ready for shipment, go right ahead and tie it up and ship it at the earliest possible date." The last correspondence had between the parties was dated October 13th, a letter by the tanning company to Friedman, wherein the tanning company accuses Ackerman & Brummel of having refused to accept leather complying with the terms of the contract, and of having refused to pay for each consignment within 30 days after shipment from Vallejo.

Wise & O'Connor, Otto Irving Wise, Richard S. Goldman, and John C. Altman, all of San Francisco, Cal., for plaintiffs in error.

John L. McNab and Byron Coleman, both of San Francisco, Cal., for defendant in Error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The theory of the plaintiffs in error is that the tanning company refused to comply with the directions of Friedman, made after the second inspection, to ship the leather at once, and that by refusal to carry out such request, or to deliver any other backs until the shipment of 255 backs had been paid for, it followed that the tanning company broke the contract and became liable for damages for a breach. The argument is that a failure to pay an installment due under the terms of a contract does not avoid the entire contract, or constitute a breach, unless by express terms such failure to pay is made a ground for the termination of the contract, and Cox v. McLaughlin, 54 Cal. 605, is the main decision relied upon. There a contractor brought action for damages for breach of contract for erecting a building, and alleged failure to pay certain installments due under the contract at the time provided for. The court held that such failure did not give plaintiff right to terminate the contract and sue for damages for its entire breach. Upon a later appeal of the same case (Cox v. McLaughlin, 76 Cal. 60, 18 Pac. 100, 9 Am. St. Rep. 164) it was held that the contractor could amend and recover upon a quantum meruit for labor and material furnished, but could not maintain action for damages for breach of the entire contract. Under the later cases in California the earlier decision in Cox v. McLaughlin, supra, is regarded as holding that a mere refusal to pay an installment upon the contract price of an article as it becomes due does not authorize the plaintiff to abandon the work and recover the profits he would have made if the work had been completed under the contract. Woodruff Co. v. Exchange Realty Co., 21 Cal. App. 607, 132 Pac. 598; Porter v. Arrowhead Reservoir Co., 100 Cal. 500, 35 Pac. 146.

In the recent case of Jensen v. Goss (Cal. App.) 179 Pac. 225, the parties made a contract for purchase and sale of hay, payments to be made on the 13th of each month following delivery. The buyer failed to make the payments as agreed, and the seller refused to deliver. The court held that the seller of the hay was justified in rescinding the contract, when it was shown that there was a clear intention to violate its provisions and to withhold payments due until the delivery of more hay. Minaker v. California Canneries Co., 138 Cal. 239, 71 Pac. 110, was cited to support the rule that plaintiff could not offset any damages for alleged breach by refusal to pay on the ground of a failure to deliver the quality of hay required by the contract without showing performance on his own part of his own agreement. The court said:

"It was just as important that payments should be made as agreed upon as it was that deliveries should be made according to the contract, and when

one of the parties flatly declared that it would not pay as agreed, the other party had the right to refuse to further deliver."

[1, 2] By the application of these rules, Ackerman & Brummel first defaulted, for on August 22d the tanning company shipped 255 backs of leather in accordance with the terms of. the contract, and invoices were mailed on August 23d, and receipt of the consignment was acknowledged on September 25th. The modified contract, as to terms of payment, was made before the leather was shipped; hence payment was due September 22d, or 30 days after shipment from the tannery. It was on September 25th, however, that Ackerman & Brummel wrote the letter quoted, refusing to carry out the terms of the contract, and announcing their intention to continue to hold back payment until the order was completed. The situation gave to the tanning company the right to stand upon the terms of the contract and to refuse performance until the terms thereof were lived up to. The delayed acceptance by the buyers of the leather that had been once rejected was a waiver of defects in the leather, and of contract requirements as to the quality of the merchandise, and Ackerman & Brummel, having failed to comply with the terms of payment, are not in a position to insist that the tanning company should have proceeded and completed the contract in the manner specified. San Francisco Bridge Co. v. Dumbarton Land, etc., Co., 119 Cal. 272, 51 Pac. 335.

[3, 4] In what we have said we construe the mode of payment stated in the contract, "2%—30 days f. o. b. tannery," to require payment within 30 days of the date of shipment from the tannery, and if paid sooner than the expiration of the 30 days a deduction of 2 per cent. was to be made. Such a construction usually obtains in respect to mercantile agreements where, as a rule, the parties are held to have intended to make time the essence of the contract. Cleveland Rolling Mill v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920; Jensen v. Goss, supra.

We think the District Court was right in its findings, and that its legal conclusion should be sustained.

Affirmed.