[Civ. No. 3643. Third Appellate District.—December 7, 1928.]

ROYAL REALTY COMPANY (a Corporation) et al., Appellants, v. HARVEY INVESTMENT COMPANY (a Corporation) et al., Respondents.

McAdoo, Neblett & O'Connor, Haas & Dunnigan and William H. Neblett for Appellants.

Hickcox & Thompson, Shapiro & Shapiro and Dana R. Weller for Respondents.

TUTTLE, J., *pro tem.*—This is an action for the specific performance of a contract for the exchange of real property, made between H. H. Helbush, assignor of plaintiffs, and defendant corporation, Harvey Investment Company. The contract consisted of a memorandum offer and acceptance. It provides for the exchange of a ranch at Paso Robles (belonging to plaintiff York Realty Com-

pany) for two pieces of business property in the city of Los Angeles, belonging to defendant Harvey Investment Company. The said ranch was to be included in the transaction, subject to a $40,000 mortgage, due one year after date, at seven per cent. In addition to putting in the ranch, Helbush was to pay the sum of $270,000 cash. Upon the conveyance of said ranch to defendant Harvey Investment Company and the payment to said defendant of the said sum of $270,000 cash, it agreed to convey to plaintiff, Royal Investment Company, the parcel of Los Angeles realty at the corner of Washington and Flower Streets, free and clear of all encumbrances, and another parcel in said city at the corner of Tenth and Flower Streets, subject to a mortgage of $125,000, then of record. The parties agree that the consummation of the matter shall be handled through escrow instructions.

The complaint sets forth the contract and the escrow instructions delivered by each party to the bank, and describes in detail the steps taken by plaintiff in carrying out the terms of the said contract and which it is alleged show a full compliance with the terms and covenants thereof. It is further alleged that defendants Harvey Investment Company and Leo M. Harvey, with intent to trick, cheat, and defraud plaintiffs, made a pretended conveyance of the property at Tenth and Flower Streets to Eugene L. Neustein and Rose Neustein on September 3, 1923, and that thereafter and on September 12, 1923, said last-named parties conveyed said property to Joseph B. Dabney, and that all said parties paid nothing for the same and each took the same with full knowledge of the rights of plaintiffs and their assignor, with intent to defraud them. Allegations of a similar tenor are made with reference to the lot at Washington and Flower Streets, the grantees being George Ginsburg and Eva Ginsburg. It is also set forth that said last-named property was mortgaged by said grantees to one Murphy for $50,000, and that said Murphy took said mortgage in pursuance of said conspiracy. The said deed and mortgage were dated September 5, 1923. The relief asked is that defendant Harvey Investment Company be required to convey the said two parcels of land in the city of Los Angeles to plaintiffs, and that the various

deeds and mortgages executed in furtherance of the said conspiracy to defraud be ordered delivered up and canceled.

The answer, after denying the allegation of the complaint, sets up by way of affirmative defense that the said contract was obtained through fraud. It is stated that plaintiff's assignor, H. H. Helbush, made false and fraudulent statements and representations in respect to the net annual income from the ranch property and also concerning the acreage planted to almond trees. As the whole ground for appeal converges upon these two subjects claimed to have been misrepresented, we will quote the language of the amended answer in respect thereto:

"That defendants are informed and believe and upon such such information and belief allege that the statement made by H. H. Helbush that 125 acres of said ranch were planted in almond trees of various ages was untrue, and that the total number of acres of said ranch planted in almond trees of any age, or all ages, was much less than 125 acres, to-wit, 109.15 acres, and no more."

"He (H. H. Helbush) further stated and represented to said defendant that said ranch had been, for some years past, producing a net income annually in excess of ten thousand ($10,000.00) dollars."

"Defendants allege that the statement of H. H. Helbush that the ranch had produced a net income annually of ten thousand ($10,000.00) dollars for several years, were untrue, and allege that said ranch had been operated at a loss instead of profit during said years."

The findings of the trial court with reference to these allegations are as follows:

"That prior to the making of said contract of sale and exchange, both H. H. Helbush, the assignor of plaintiffs, and V. C. Simpson, as agent for said H. H. Helbush, stated and *represented to said Leo M. Harvey as an inducement to the making and entering into said contract by said Harvey Investment Co. that said real property offered in exchange by said H. H. Helbush had from 120 to 125 acres thereof planted to almond trees;* and that when Leo M. Harvey visited the ranch to inspect the same in company with Simpson that he was shown the almond orchard extending to the boundary fence of said property, but was not told that said *boundary fence included 14 acres of said land*

*planted to almond trees that lay within the limits of the Rancho Paso Robles,* and were not included in the land described in said contract, and that said facts were known to said H. H. Helbush at the time and said 13 acres of land were expressly excepted from the deed executed by the plaintiff, the York Realty Co., purporting to convey the property to Harvey Investment Co., and deposited by said plaintiff in said escrow, as hereinbefore found; that said Leo M. Harvey believed said statements and representations as to the number of acres of said property offered to be conveyed to Harvey Investment Co. that were planted in almond trees and relied upon the same and reported the same and his belief therein to the board of directors of the defendant corporation Harvey Investment Co. and said board of directors believed said statements and representations and relied upon them and believing said statements and representations, and relying upon them authorized said Leo M. Harvey, as president of the corporation, to enter into said contract of exchange on behalf of said corporation; that believing and relying upon said statements and representations, and not otherwise, said Leo M. Harvey was induced to enter into and execute said contract of exchange; that the total acreage of said property, together with that part of the Rancho Paso Robles inside the fence line planted to almond trees, was 109.64 acres; that the total acreage of said property, as described in the deed executed by the plaintiff, York Realty Company to Harvey Investment Co., and deposited in said escrow and outside of the Rancho Paso Robles, planted to almond trees, was 96.64 acres; that said acreage planted to said almond trees that was excepted in said deed deposited in escrow by the York Realty Company had a market value at the time of the execution of said contract, of from $600.00 to $700.00 per acre.

"That said statements and representations made by said V. C. Simpson and H. H. Helbush to Leo M. Harvey as to the number of acres of said property that was planted in almond trees were false and untrue and said H. H. Helbush knew they were false and untrue when the same were made, and made them for the purpose of inducing said Leo M. Harvey to enter into and execute said contract of exchange

on behalf of and as the president of the defendant, Harvey Investment Co. . . .

"That prior to the making of said contract of sale and exchange, both V. C. Simpson and H. H. Helbush, the assignor of plaintiffs, represented and stated to Leo M. Harvey, as an inducement to the making and entering into said contract by said Harvey Investment Co., that said property offered to be conveyed to said Harvey Investment Co. by said H. H. Helbush in said proposed exchange, had an income of $8,000.00 per year and that said property had produced an income of $8,000.00 one year; that said Leo M. Harvey believed said statements and representations as to the income of said property and relied upon the same and reported the same and his belief therein to the board of directors of the defendant corporation, Harvey Investment Co., and said board of directors believed said statements and representations and relied thereon, and believing and relying upon said statements and representations, authorized said Leo M. Harvey, as president of the corporation, to enter into said contract of exchange on behalf of said corporation; that believing and relying upon said statements and representations and not otherwise, said Leo M. Harvey was induced to enter into and sign said contract of exchange, including said escrow instructions, on behalf of and in the name of said defendant, Harvey Investment Co.

"That said statements and representations were false and untrue, and said H. H. Helbush, plaintiff's assignor, knew they were false and untrue when they were made, and made them for the purpose of inducing said Leo M. Harvey to enter into and execute said contract of exchange on behalf of and in the name of said defendant, Harvey Investment Co. as the president thereof; that said property was acquired by the plaintiff, York Realty Company on or about the year 1920, and was owned, operated and controlled by said York Realty Company during the years 1921, 1922 and 1923; that during each and every of said years said property was operated at a loss, and the total net loss for said period was the sum of $14,138.19; that said H. H. Helbush knew said property had been operated and was being operated at a loss when said statements and representations were made by him and said V. C. Simpson, as aforesaid."

Judgment of nonsuit was entered as to defendants Dabney, Shapiro, and Murphy. This leaves only one parcel of Los Angeles realty before the court, to wit, the lot at the corner of Washington and Flower Streets, and appellants urge that the trial court should have granted specific performance as to this lot, ordering the other party to pay $20,000 to balance the equities of the property left in the transaction.

The trial court entered judgment declaring the said contract of sale void, and this appeal is prosecuted from said judgment.

The attack made by appellants is one directed solely at the findings, and the first contention is that the finding relative to the net income from the ranch is (1) not sufficient to support the judgment, and (2) that there is no evidence to support it. It is argued that while the answer alleges that it was represented that the net income was in excess of *$10,000*, the trial court finds that it was represented that the said ranch had a net income of *$8,000* per year and that the said property had produced a net income of *$8,000* one year. The court further found that said ranch was operated at a loss during each year that it was owned by plaintiff York Realty Company, of which corporation one H. H. Helbush was president, and there is a further finding that the total amount of such loss, during said period (1920–21–22) was $14,138.19. Succinctly stated, appellants' position is that the finding of the court that the representation was made that the income was $8,000 for one year is a finding in favor of plaintiffs and does not support the judgment because this finding expressly negatives and establishes the untruth of the allegation in the answer that Helbush made and Harvey relied upon a representation that the annual net income from the ranch was in excess of $10,000. It is further contended that this finding is outside the issues and is not raised by the pleadings.

It is the duty of an appellate court, in reviewing the findings, to give them a liberal construction so as to uphold rather than defeat the judgment. All the findings are to be read together and must be reconciled to prevent any conflict upon material points, if such reconciliation is possible. (*Hotaling* v. *Hotaling,* 193 Cal. 368 [56 A. L. R. 734, 224 Pac. 455].) Appellant has apparently overlooked a

further finding upon this subject, to the effect that the ranch was operated at a loss as stated above. This finding is directly responsive to the allegations of the complaint, quoted *supra*. ▉ Giving a liberal construction to the finding questioned, it would appear that the issue presented to the trial court was the ultimate fact whether or not Helbush falsely represented to Harvey that the ranch produced a material income, when he knew it had been operated at a substantial loss during all the time it was operated by appellant York Realty Company, of which Helbush was manager. Furthermore, it does not appear that any objection was made at the trial to the testimony as to an $8,000 income, based upon the ground that it was not within the issues. As the case stands, it was tried upon the theory that any representations as to income were within the issues, irrespective of the amount of such income. Under such circumstances this objection cannot be raised for the first time in this court. (*Horton* v. *Dominguez,* 68 Cal. 642 [10 Pac. 186].) If this objection had been made at the trial, the answer could readily have been amended to conform to the proofs. The contention of appellant presents, if we concede it has any force at all, an objection which is formal only, and lacking in merit so far as the substantial rights of the parties are involved.

▉ Is there any evidence to support the finding that it was represented to defendant Harvey Investment Company that the net income was $8,000 a year, and that the property had produced a net income of $8,000 one year? The trial court found that certain representations were made by H. H. Helbush, assignor of plaintiffs, and V. C. Simpson, his agent. No attack is made upon the finding as to the said agency, though appellant asserts that such agency did not exist. In the absence of a direct attack upon this finding, this court must and will assume that it was based upon sufficient evidence. There is testimony in the record upon this question of income. The witness Harvey, testifying to a conversation between him and Simpson, agent for Helbush, stated: "A. He told me it was a good income property; that the ranch produced about $10,000.00 a year, and when the young almond orchard would come into bearing it would produce more than that and it would be a good thing to get income property because I have the corner of 10th and

Flower hardly bringing in anything. Q. What did he say about the income? How much was the income? A. He says it would net about $10,000.00 a year. He figured on a valuation of about $100,000.00. He said it will bring you in about 10 per cent on your money.''

There is also in the record a conversation between Harvey and Helbush, as follows: ''Q. What else was said at that time about the ranch? The Court: By whom? Q. By Mr. Helbush? A. He said the income of the ranch was about $10,000.00. Q. For what year? A. He mentioned the year 1922.''

In another place Simpson testified the income from the ranch had not been $8,000 during any one year.

As we have before stated, the real question at issue was, did plaintiffs' assignor misrepresent the income from said property to such an extent that defendant Harvey Investment Company was, by fraud, induced to enter into the contract of purchase? No question is raised as to the finding that the ranch was operated for years at a loss, during which time Helbush was manager of said corporation, and the further finding that Helbush knew this to be true.

We are satisfied that the record shows that the finding attacked is sufficiently supported by the evidence, and that the representations involved therein were asserted as existing facts, material to the transaction, and which had a reasonable tendency to induce defendant Harvey Investment Company to consider the same and rely upon them as representations of such facts. (*Harris* v. *Miller*, 196 Cal. 8 [235 Pac. 981].)

The court found that defendant Harvey Investment Company entered into the contract believing the statements and representations to be true and relying upon them to be true. It is urged that the evidence showed that these were not the facts. While it is true that Harvey visited the ranch and stayed there an hour or two, it was, after all, a question of fact for the trial court to decide, under all the facts and circumstances of the case, whether or not this defendant relied upon the representations made, and we do not feel disposed to disturb such a finding. The view we take of this contention is well expressed in the case of *Quarg* v. *Scher*, 136 Cal. 406 [69 Pac. 96], where the court says: ''It is next insisted that the defendant saw the land

and inspected it before making the contract, and having every opportunity to learn of the quantity of the land, he had no right to take the word of plaintiffs on the question of quantity; in other words, that the rule of *caveat emptor* applies to the case. This contention is not well founded; the defendant had a right to rely upon plaintiffs' representations as to the quantity of land. The acreage of land is not a thing that can be seen with the eye at a glance, but can only be ascertained with accuracy by scientific measurement, and when a vendor states to the vendee the amount of land in the tract which is the subject of the sale, such vendor will not thereafter be heard to say in a court of equity the vendee had no right to believe him.''

It is next contended by appellant that the finding, quoted *supra,* upon the question of the acreage of the ranch property planted to almonds is not supported by the evidence. In this connection witness Simpson, agent for Helbush, testified that Helbush made a written memorandum of the variety of trees to which the ranch was planted. Harvey, president of defendant Harvey Investment Company, testified that Simpson informed him that the ranch contained the following almond trees: ''Twenty acres about two years old and 40 acres four years old and 65 acres twelve years old.'' This witness also testified that Helbush, at a conversation had in his office, made the statement that ''there is about 122 to 125 acres of almonds.'' Witness Davis, for defendants, testified that he made a survey of the ranch, and that the acreage in almonds was 96.94, and that the parcels planted to almonds lying within the Paso Robles Ranch grant was 12.31 acres, and that the total of such planting lying within the fence lines of plaintiffs was 109.64 acres.

In explanation of the matter of discrepancy in the acreage planted to almonds, the following facts appear to be undisputed: Included within the fence lines of the ranch property there were 13 acres planted to almonds to which neither of the plaintiffs nor their assignor ever had record title. These 13 acres were within the limits of another property, known as the ''Rancho de Paso Robles Grant.'' The deed deposited in escrow by plaintiffs in pursuance of the contract of exchange, expressly excepted this 13 acres describing the property to be conveyed. At the trial plain-

tiffs attempt to prove title by adverse possession to this 13-acre parcel. Assuming that the establishment at the trial of such title could be of any assistance to plaintiffs, we are at a loss to understand how such a title could be proven, when the record owners of the same were not before the court. They were not named as defendants in the action, nor served with process. Title to real property cannot be adjudicated in that manner, as there must not only be jurisdiction over the subject matter, but jurisdiction over the person as well. The court further found that this 13 acres had a market value of $600 to $700 per acre, and this finding is not questioned.

We have carefully examined the record in connection with this finding as to the representations made upon the matter of acreage planted to almonds, and are of the opinion that the finding assailed is supported by the evidence.

It is finally urged by appellant that there is no evidence to support the finding on adequacy of consideration and on the justness and reasonableness of the contract, and that the finding upon these issues does not support the judgment. Typical of the argument relied upon by appellant as a ground for reversal in this connection is the following: "As can be seen from the above quoted paragraph from the complaint, the various values of the property were alleged as being those stated in the contract. The answer merely denies that these values stated in the contract constitute a just and adequate consideration. Therefore, it is denied that $100,000 is the value of the ranch. . . . The denial is in the form of a negative pregnant and admits the value of the ranch to be $99,999.99. . . . Such a finding (first referred to in this paragraph) cannot be considered and will be disregarded." Numerous witnesses testified to the value of the ranch. One testified that it was worth between $45,000 and $50,000. No objection was raised to this testimony upon the ground that the facts were admitted by the pleadings, and the point is now raised for the first time. ▮ Where an examination of the record discloses that the parties introduced evidence upon certain issues, and, by their conduct, plainly indicated that they considered the facts testified to as being legitimately within the issues to be tried and found by the lower court, they will not be permitted to urge, for the first time here, that such facts were admitted

by the pleadings and hence were not within the issues and that no finding could be based upon such testimony. These final contentions of appellant do not, in our opinion, merit further discussion. Appellant, in the first paragraph of his argument of his opening brief, states his position as follows: ''We contend that the judgment must be reversed because it depends for its support wholly upon these two findings of fraud (referring to the misrepresentations made as to income and acreage), which we further contend are not supported by the evidence.'' Furthermore, the trial court having found for defendants upon the issues of misrepresentations made in the entering into of the contract, such findings necessarily defeat the right of recovery, and it was unnecessary that the findings dispose of any further issues as all other issues thereby become entirely immaterial. (*Smith* v. *Dubost*, 148 Cal. 622 [84 Pac. 38] ; *Sharp* v. *Pitman*, 166 Cal. 501 [137 Pac. 234] ; *Pyle* v. *Fossler*, 200 Cal. 204 [252 Pac. 599].)

 The conduct of defendants in proceeding to dispose of and encumber their property, before the time for performance of the contract had expired, is subjected to severe criticism at the hands of appellant. If the contract was in fact obtained through fraud, as it appeared to have been, respondents were within their rights in so treating it. While the action was for a specific performance, it is well settled that fraudulent misrepresentations by which a person may be induced to enter into a contract constitute a defense in such an action. (23 Cal. Jur. 422.) When the trial court found this defense to be sustained, all other issues raised by the pleadings became immaterial. (See authorities cited *supra*.) This disposes of the contention of appellant that, under the rule that a vendor need only deliver title at the time when he is called upon to perform, the misrepresentations made as to the acreage were not a defense. If the contract were obtained through fraud at its inception, no subsequent act of appellants alone could restore its validity. If fraud in the entering into the contract were not an issue, and there were no affirmative defense, the contention of appellants as to the question of performance would be of greater weight.

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 4, 1929.

All the Justices concurred.