[Civ. No. 11942.   First Dist., Div. Two.   Dec. 23, 1942.]

P. L. BURR, Plaintiff and Appellant, v. PACIFIC INDEMNITY COMPANY (a Corporation) et al., Defendants and Appellants.

354

Theodore M. Stuart for Plaintiff and Appellant.

Courtney L. Moore and Walter A. Dold for Defendants and Appellants.

DOOLING, J. pro tem.—Two cross-appeals are herein presented on the one typewritten transcript: (1) An appeal by defendants from a judgment in favor of plaintiff, P. L. Burr, and (2) an appeal by plaintiff, Burr, from that part of the judgment only which failed to allow him as part of his recovery two additional items of $481.38 and $2,140.

The action arose out of work done by Burr for defendant DuPuy in the construction of the Broadway low level tun-

nel for Joint Highway District No. 13, and was for work, labor and materials furnished by said plaintiff. The amount of the judgment for plaintiff is not attacked by defendants, and we are entitled to assume that it is supported by the evidence. Defendants urge two grounds for reversal which are thus stated in their opening brief:

"1. Can a contractor quit an uncompleted job, and recover the reasonable value of work and labor performed when he quits in direct violation of the terms of his written contract?

"2. Can two persons jointly maintain a lawsuit for work and labor performed as contractors on a construction job when only one of them has a contractor's license, when the other has no license, and when the two of them have not a joint or combination license as required by the Contractors' License Law?"

Under point one defendants in their opening brief assume, without argument or discussion, that the work sued for by Burr was done under a written contract and that certain provisions of that contract were violated by Burr when he quit the job with his work unfinished on October 15, 1937. This assumption flies directly in the teeth of findings V and VII made by the trial court in the following language:

"V.

"That the said plaintiff and the said DuPuy on June 30, 1937, and July 1, 1937, attempted to enter into a written agreement under which the said plaintiff was to furnish said labor, materials and supplies, and there was then prepared a portion of said agreement in typewriting with ink interlineations and four separate letters; all to be signed or initialed by the plaintiff P. L. Burr and the said defendant DuPuy. That the said plaintiff Burr and the said defendant DuPuy verbally agreed that all of the said writings combined would constitute their written agreement, one of which was the 'breakdown' on which the monthly payments were to be computed. Thereupon the said Burr signed or initialed all of said papers and the said DuPuy signed or initialed all thereof except the fourth letter (referred to in the evidence as the 'disputed letter') which said letter the said DuPuy accepted and approved and agreed to sign and mail to said Burr; that thereafter said DuPuy falsely represented that he had signed and mailed the same to said Burr; that

the said disputed letter contained material provisions and agreements without which the said attempted written agreement was incomplete and failed to accomplish a complete meeting of minds or become a binding written contract; that said DuPuy has repudiated the obligations of said disputed letter.''

''VII.

''That although the said attempt to enter into an agreement in writing failed the said plaintiff and the said defendant DuPuy proceeded with said work as though the prices, terms of payment and times of payment set forth in the said various writings were effective and represented to that extent the agreement of the parties; and, in furnishing the said labor, materials and supplies, the said defendant DuPuy well knew that the said plaintiff was proceeding upon the understanding that the agreed prices, terms of payment and times of payment were those set forth in the said various writings; and the said defendant DuPuy recognized his obligation to pay said prices at the times and in the amounts so specified. That the said agreed prices were and are the reasonable value of the said labor, materials and supplies.''

These two findings are in no way attacked in defendants' opening brief, and in their closing brief they content themselves with a general statement that both parties recognized from July 1 to October 15 that they were conducting their operations under a contract. In this state of the briefs we would be justified in assuming that findings V and VII above quoted find ample support in the evidence. (*Robben* v. *Benson*, 43 Cal.App. 204, 213-214 [185 P. 200]; *Royal Realty Co.* v. *Harvey Inv. Co.*, 95 Cal.App. 352, 360 [272 P. 805]; *Brovelli* v. *Bianchi*, 136 Cal. 612 [69 P. 416]; 2 Cal.Jur. 877.)

An examination of the transcript shows that this assumption is correct. Taking the evidence most favorable to plaintiff (in accordance with the time honored rule governing appellate courts) it appears that a typewritten contract to be executed by Burr and DuPuy was prepared by an attorney acting for DuPuy; that this contract was supplemented by three letters signed or initialed by both parties; that Burr submitted to DuPuy a fourth letter (called in finding V the ''disputed letter'') stating that he would not sign the formal contract unless DuPuy agreed to and signed this fourth letter; that DuPuy promised to sign the letter and thereupon the formal contract was signed by Burr, and DuPuy had

his pen in hand prepared to sign the letter when they were interrupted by a third party; that DuPuy then said that he would sign the letter later and mail it to Burr and that **Burr** before leaving said: "Now that is the condition because I do not want to go on with this contract and will not go on with this contract unless that letter is satisfactory and according to our agreement." The "disputed letter" was never signed by DuPuy although several times afterwards he promised Burr that he would sign it. Meanwhile Burr entered upon the performance of the work, and progress payments were made to him until October 15 when DuPuy refused to pay him anything further and Burr thereupon quit the job.

The evidence above recited having to do with the "disputed letter" is corroborated by certain witnesses, who represented the bonding company which furnished Burr's bond on the representation of DuPuy that he had signed or would sign the "disputed letter." Their testimony further shows that when it finally became apparent that DuPuy had not signed and would not sign the "disputed letter" the bonding company refused to be bound by its bond and returned **the** check for the premium to DuPuy.

That under the facts found by the trial court in finding V no binding written contract was ever entered into is such a simple truism of the law of contracts as to require no citation of authority. In the language which is familiar to every first year law student there was no meeting of the minds.

When DuPuy on October 15 refused to pay Burr any part of the money then due him under their oral or implied agreement Burr was legally justified in ceasing work and suing for the value of the work and materials already furnished. (*Porter* v. *Arrowhead Reservoir Co.*, 100 Cal. 500 [35 P. 146]; *San Francisco Bridge Co.* v. *Dumbarton Land & Improvement Co.*, 119 Cal. 272 [51 P. 335]; *Laiblin* v. *San Joaquin Agricultural Corp.*, 60 Cal.App. 516 [213 P. 529]; *Big Boy Drilling Corp., Ltd.* v. *Etheridge*, 44 Cal.App.2d 114, 119 [111 P.2d 953].)

Defendants do not question this rule of law but argue that it is inapplicable to this case: (1) Because under the written contract extra work (of which there was admittedly considerable) could only be charged for where contracted for in writing signed by DuPuy; (2) because under the writ-

ten contract DuPuy was entitled to retain an amount sufficient to meet any claims against the work by subcontractors, laborers or materialmen; and (3) because under the written contract Burr was not entitled to cease work until 10 days after default in any payment and then only after giving 5 days' written notice. These points all assume and depend on the existence of the written contract. The finding of the trial court that the proposed written contract was never entered into destroys their major premise. Burr was not bound by any of these provisions of the proposed but legally unexecuted contract and the arguments predicated thereon are left without factual foundation.

The second point relied upon by defendants depends upon the following facts: F. A. Dailey was Burr's foreman on the job. On the witness stand he testified that he had a written contract with Burr. Upon defendants' demand this writing was produced but was not introduced into evidence on the trial of action. At a later stage of the trial it was stipulated that Dailey should be added as a party plaintiff and Alta Electric and Mechanical Company, Inc., should be added as a party defendant, without any amendment to the pleadings. This was done by formal written order of the court. The judgment as entered, however, runs only in favor of Burr, and defendants point to no evidence in the reporter's transcript which would support a judgment in favor of Dailey.

After judgment had been ordered by the court defendants for the first time raised the point that Dailey was a party to the contract between Burr and DuPuy and that Dailey had no contractor's license and Dailey and Burr had no joint license. This point was made by motion to dismiss the action on that ground and also by motion for leave to reopen the case so as to set up that defense by amendment to the answer and to produce evidence in support thereof. These motions were denied by the court. After the entry of judgment the same matter was again urged by defendants in support of a motion for new trial.

The case originally went to trial on May 15, 1939. During the first day of the trial counsel for plaintiff at defendant's request produced and exhibited the document which he stated to be Dailey's contract with Burr. This document was neither introduced nor marked for identification. No evidence was introduced by any party during the course of the protracted trial tending in any way to prove that Dailey

had any interest in the contract and the court properly, in this state of the evidence, ordered and gave judgment for Burr alone. The trial was not concluded until December 18, 1939. The notice of motion to dismiss the case and the notice of motion to reopen the case and file an amended answer were filed on March 5, 1941, and the motions were noticed for March 12. These motions were supported by an affidavit of one of defendant's attorneys which recited in part:

"That affiant is informed and believes and therefore alleges that said contract of July 1, 1937, and the construction work on said Broadway Low Level Tunnel was performed by said Dailey and Burr as joint contractors or joint adventurers under and by virtue of the terms of said agreement of November 29, 1930, marked Exhibit 'A'."

In opposition to these motions affidavits of both Burr and Dailey were submitted categorically denying that Dailey was a contracting party with Burr or interested in Burr's contract with DuPuy.

It further appears from the affidavits on these motions that judgment had been ordered for plaintiff on February 3, 1941, and that proposed findings and proposed amendments thereto had been prepared and were then ready for submission to the court.

In attempted explanation of their long delay in attempting to raise this new issue one of the attorneys for defendants submitted an affidavit containing the following averments:

"That thereafter, on or about February 13, 1941, your affiant had a conference with Mr. T. Rosenberg, one of the officers of Alta Electric & Mechanical Co., and with Mr. H. C. Millsap, attorney at law in Los Angeles representing the Alta Electric and Mechanical Co. in other matters. . . . That in the course of said conversation the matter of joinder of F. A. Dailey as plaintiff and cross-defendant . . . was discussed, and certain remarks were made that caused your affiant to wonder if said F. A. Dailey was a duly licensed contractor by the State of California. That thereafter your affiant researched the law relative to the necessity of the contractor having a license . . . and for the first time discovered that not only did individual contractors have to have a license but, by an amendment in 1935, the law required that where two or more persons, to each of whom had been issued a license, jointly submitted a bid or otherwise acted in the

capacity of a contractor, they had to secure an additional license for acting in the capacity of such joint venture or combination.''

It thus appears that after a trial extending from May 15, 1939, with interruptions, to December 18, 1939; after learning of Dailey's possible interest in the contract on May 15, 1939; after protracted arguments and briefing; and after judgment had finally been ordered on February 3, 1941, it first ·occurred to counsel for defendants on February 13, 1941 to inquire into the law and the facts about Dailey's possible interest in Burr's contract with DuPuy. It further appears that it was then averred, ''upon information and belief'' only by defendant's attorney that Dailey was a party to the contract and this fact was denied under oath by both Dailey and Burr.

The result was that on March 12, 1941, the trial court was asked to reopen the case to try a new issue never before suggested, an issue then only suggested upon information and belief and flatly denied by both Dailey and Burr, and with the only explanation for the delay of almost two years in urging it that it had not occurred to counsel to inquire into either the facts or the law at any time before February 13, 1941.

▪ The trial court has a wide discretion in the matter of allowing or denying leave to amend a pleading to permit a new issue to be raised after the pleadings have been settled and the trial has commenced. (*Nulty* v. *Price*, 202 Cal. 279 [260 P. 291]; *Manha* v. *Union Fertilizer Co.*, 151 Cal. 581 [91 P. 393]; *Scholle* v. *Finnell*, 167 Cal. 90 [138 P. 746]; *Johnson* v. *Johnson*, 134 Cal.App. 460 [25 P.2d 538]; *Reay* v. *Reay*, 97 Cal.App. 264 [275 P. 533]; *Hagar* v. *Home Stores, Inc.*, 85 Cal.App. 533 [259 P. 1007].) Under the facts of this case it is clear that the trial judge did not abuse his discretion in refusing to allow this new issue to be so tardily raised.

▪ Defendants argue that because this issue goes to the legality of the contract it could be raised at any time. If it had clearly appeared to the trial court or clearly appeared here that the contract was illegal the plaintiff should be denied a recovery. (*Force* v. *Hart*, 209 Cal. 600 [289 P. 828]; *Morey* v. *Paladini*, 187 Cal. 727 [203 P. 760].) But in this case far from so appearing the suggested facts which would make the contract illegal were only stated on information

and belief and were denied by the counter-affidavits. It rested in the sound discretion of the trial court to determine whether after the long delay and on the showing made the case should be reopened to litigate a disputed question of fact on which the legality of the contract would depend.

The plaintiff's appeal presents the question of the sufficiency of the evidence to justify two deductions by way of offsets from the amount of his judgment.

The first is an item of $481.38. Sheerin, a witness for defendants, testified that DuPuy was required by the District Engineer to pay this amount for damage to certain conduit pipes and cable which were damaged by a tractor running over them. He further testified that Farish, a subcontractor under plaintiff, had tractors on the job at the time. Dailey while denying knowledge of the cause of this damage testified that a tractor would have to run over this conduit to get in and out of the tunnel. It is claimed that this item is excessive on its face, that there was no proof that it was for the reasonable value of the repairs, no proof that the damage was caused by plaintiff's negligence and that the owner of the material damaged was guilty of contributory negligence.

In the trial of the case, extending over a period of many days and involving testimony concerning many dozens of items, the evidence at times, as in this instance, was undoubtedly sketchy. On the cross-examination of defendants' witness no inquiry was made as to the reasonableness of this particular item; the witness testified that DuPuy paid the amount and its reasonableness was apparently not questioned at the time. We think that the trial judge was justified in drawing an inference from the testimony that the conduit was damaged by the negligent operation of one of the tractors operated by Burr's subcontractor (there was no evidence of any other tractors operating on the job at that particular time) and that contributory negligence of the owner of the conduit was not proved.

The $2,140 item represents an amount paid to Farish, Burr's subcontractor, for hauling dirt. Sheerin, defendants' witness, testified that this represented 2,140 yards of dirt at $1 per yard hauled from the trenches in the tunnel. Dailey testified for plaintiff that none of this dirt was hauled out of the tunnel. This conflict was resolved by the trial court

in favor of defendants. Plaintiff makes the further claim that in any event the full amount paid Farish by DuPuy, including this $2,140, was already once deducted from plaintiff's claim in arriving at the judgment and that in deducting it a second time the court was duplicating the offset. The unit prices under which Burr was working provided $1 per foot for digging this trench, which would include hauling the material away if necessary. The full charge was made by plaintiff for this work and included in the judgment. It is thus clear that the $2,140 was a partial payment on account of this $1 per foot of excavation and hence properly deducted.

Plaintiff quotes section 2 of the Public Works Act (Deering's Gen. Laws, Act 6423); "Upon the trial of any such action, the court shall award to the prevailing party a reasonable attorney's fee, to be taxed as costs, and to be included in the judgment therein rendered."

An attorney's fee was included in the judgment. Plaintiff asks for an additional attorney's fee on appeal. The language of the section, "upon the trial," clearly limits the attorney's fee to the trial, and we find no warrant therein for the allowance of a further fee on appeal. No California case in point has been cited or found by us but the Supreme Court of Oklahoma in *National Credit Co.* v. *Franklin,* 177 Okla. 417 [60 P.2d 744] reached a similar conclusion on a statute apparently not so clearly limiting the fee to the trial of the action as ours.

The judgment is affirmed on both appeals.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied January 22, 1943, and the following opinion was thereupon rendered:

THE COURT.—To meet the claim made by appellants DuPuy et al., in their petition for rehearing that this court has misstated the facts to the prejudice of their right to petition for a hearing in the Supreme Court we herewith set out in full the portion of the transcript which they assert was ample evidence to support a finding that Dailey was a contracting party: "Mr. Moore. Q. Mr. Dailey, are you a partner of Mr. Burr in this contract? A. I had a written agreement with Mr. Burr. Q. Have you anything to do with the profit and loss

in the venture? A. Yes. Q. Now, on or about July 1, 1937— Mr. Stuart (interrupting). Pardon me. Just before you leave that, so it will clear up the record, he has a working interest of what the agreement is but the contract was to be carried on in the name of P. L. Burr. Mr. Dold. In other words, he was a partner of Burr but the contract was carried on in the name of Burr. Mr. Moore. Mr. Burr and Mr. Dailey were partners on the job but the contract was conducted under the name of P. L. Burr. Mr. Stuart. I don't think they were partners but he has a working interest. Mr. Dold. Could you let us see the contract? Mr. Stuart. Yes.''

We did not quote this portion of the transcript in the opinion because in its vague and uncertain terms we could not discover any substantial support for a finding that Dailey was either partner or joint adventurer. The fact that he was a partner was expressly denied by Mr. Stuart and counsel for DuPuy chose to drop the inquiry at that point. The nature of Dailey's legal relation to Burr was not established and the entire quoted colloquy is perfectly consistent with Dailey's subsequent assertion that he was merely an employee of Burr to be compensated by a percentage of the profit.

Appellants also complain that we failed to notice an argument, first advanced in a supplemental typewritten memorandum, that Burr having accepted the benefits of the proposed contract was estopped to deny that he was bound by all of its burdens. The trial court's finding, quoted in full in the opinion, that the proposed written contract never became effective because of DuPuy's wrongful refusal to sign the disputed letter is a complete answer to this argument. No case has been cited by appellants, and we are certain none can be found, holding that a party who proceeds upon the false statement of another that he has signed, or will sign, a letter orally agreed upon as a material part of the written contract will be bound by all the burdens of the proposed contract although the other in violation of his promise refuses to bind himself to the additional burdens contained in such letter.

The petition for rehearing is denied.

Defendants' and appellants' petition for a hearing by the Supreme Court was denied February 18, 1943.